IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRENDA K. JOYNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV259 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Brenda K. Joyner, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for a POD and DIB on July 7, 2009 alleging a disability onset date of March 23, 2006. (Tr. 14, 137-38.)[1] The application was denied initially and again upon reconsideration. (Id. at 69-85.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 8.) At the July 7, 2011 hearing were Plaintiff, her attorney, and a vocational expert ("VE"). (Id. at 29-56.) The ALJ determined that Plaintiff was not disabled under the Act. (Id. at 14-24.) On January 31, 2013 the

---

[1] Transcript citations refer to the administrative record.

Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. FACTUAL BACKGROUND

Plaintiff was 48 years old on December 31, 2010, the date last insured. (*Id.* at 16, 23.) She had at least a high school education and was able to communicate in English. (*Id.* at 23.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute

its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. §

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[4] and her vocational abilities. If so, the claimant is not disabled.

---

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

20 C.F.R. § 404.1520.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of March 23, 2006 through her date last insured of December 31, 2010. (Tr. at 16.) The ALJ next found in step two that Plaintiff had the following severe impairments: left shoulder adhesive capsulitis treated surgically; right shoulder bursitis; left carpal tunnel syndrome with status post-surgical repair; fibromyalgia; and depression. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 17.) At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (*Id.* at 22.) At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that she could perform. (*Id.* at 23.)

### B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence, including Plaintiff's testimony, and the findings of treating and examining health care providers. (*Id.* at 19-22.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform the following:

> [T]he claimant ha[s] the residual capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) with the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk 6 hours out of an 8-hour workday, but will need to exercise a sit-stand option every 30 minutes; occasionally reach overhead; frequently but not constant use of the upper extremities for fine and gross manipulation; occasionally balance, kneel and crouch; occasionally climb ramp/stairs, but never ladder/rope/scaffolds;

> never crawl; frequently stoop; and the need to avoid concentrated exposure to hazards such as machinery and unprotected heights. Due to pain and mental limitations, the claimant would be further limited to simple, routine, repetitive tasks such that she could apply common sense understanding to carry out oral, written and diagrammatic instructions, take criticism from superiors, and get along with the public and coworkers.

(*Id.* at 15.)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff could not perform past relevant work as a material handler, security guard, knitting machine operator, and yarn winder. (*Id.* at 22.)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). Here, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy that she could perform such as a marker, photocopy machine operator, and ticket taker. (*Id.* at 23.)

## V. ANALYSIS

Plaintiff raises a single issue, asserting that the ALJ's decision is not supported by

substantial evidence. (Docket Entry 11 at 4.) Nevertheless, this overarching issue breaks down into numerous sub-issues loosely grouped into contentions that the ALJ erred in setting Plaintiff's RFC and in determining Plaintiff's credibility. (*Id.* at 4-14.)

I. **The ALJ's RFC Assessment Is Not Supported by Substantial Evidence.**

In pertinent part, Plaintiff asserts that the functional limitations which Dr. Ramnik J. Zota—a state consultative medical examiner—attributed to Plaintiff are inconsistent with the ALJ's RFC determination. (*Id.* at 7.) This is problematic, Plaintiff continues, because the ALJ's decision fails to either explain this inconsistency or to adequately explain the weight attributed to Dr. Zota's opinion. (*Id.*) Likewise, Plaintiff faults the ALJ for failing to address a statement by Plaintiff's treating physician—Dr. Steven T. Alexander—that she should use a walker/wheelchair. (*Id.* at 9-11.) This is problematic, Plaintiff continues, because this accommodation was necessary to help prevent falls due to weakness. (*Id.* at 11.) For the following reasons, the undersigned concludes that remand is proper.

The ALJ must consider opinions provided by medical sources "together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(b); Social Security Ruling ("SSR") 96–8p, *available at* 1996 WL 374184, at *7. The ALJ must also address those opinions and—if they conflict with the adjudicator's assessment of the RFC—must explain why the opinions were not adopted. SSR 96–8p, *available at* 1996 WL 374184, at *7. Under Social Security Administration regulations, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or

7

other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]." 20 C.F.R. § 404.1527(e)(2)(ii). *See also* SSR 96-8p (concluding that "[t]he RFC assessment must always consider and address medical source opinions" and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"). The Court "cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984). Nevertheless, an ALJ need not discuss each item of evidence in the record, but instead may limit explanation of the weight given "to obviously probative exhibits." *Id.* (citation omitted). Furthermore, an ALJ's failure to expressly state the weight given to a medical opinion may be harmless error, when the opinion is not relevant to the disability determination or when it is consistent with the ALJ's RFC determination.[5]

Here, Dr. Zota examined Plaintiff on February 2, 2010. (Tr. 293.) Plaintiff's chief complaints were bursitis and tendonitis in her right shoulder. (*Id.*) She also complained of difficulty raising her arm overhead, arthritis in her lower back, and difficulty with prolonged standing, sitting, and walking. (*Id.*) Plaintiff also reported "no Medicaid or no health financially," reported that she had not seen a doctor lately, but reported further that she had seen one the previous year, when she had been given shots in her right shoulder. (*Id.*)

---

[5] *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005) (concluding that court need not evaluate propriety of weight given to treating physician opinion that was submitted after date last insured and "not relevant" to the claimed period of disability).

Additionally, Dr. Zota's examination revealed, in pertinent part, that while Plaintiff was not using an assistive device, she had a slow gait, with slow short steps, and difficulties walking on heel and toe, squatting and rising, and raising her arm overhead. (*Id.* at 294.)

Dr. Zota then issued her "summary, diagnosis, and prognosis" as follows:

> This 47-year old white female here for Disability evaluation. Suffering from tendonitis bursitis, both shoulders, right worse than left, multilevel degenerative disc disease on lumbar spine. Based on this evaluation, this impairment may affect her ability to prolonged sitting, standing, maybe about fifteen minutes, walking about three to four blocks, lifting limited to 25 pounds, and some problems raising arm overhead and sustaining position. No problem to hear, speak or travel.

(*Id.*)

The ALJ, in rendering his decision, did not explicitly attribute any weight to Dr. Zota's opinion, but did reference it and characterize it as follows:

> In a consultative report dated February 2, 2010, Dr. Ramnik J. Zota, M.D., reported ongoing bilateral shoulder pain, left worse than right, as well as back pain. (Exhibit 7F) Her most pronounced deficits were noted to be her difficulty in raising the left arm overhead and sustaining position. (Exhibit 7F) Nevertheless, Dr. Zota found the claimant was capable of sitting and standing about 15 minutes each, walking about 3 to 4 blocks, and lifting up to a maximum of 25 pounds (Exhibit 7F) On examination, the claimant also did not require an assistive device for ambulation and had normal grip strength, normal ability to perform dexterous movements of the hands, no welling or deformity of the lower extremities bilaterally with normal range of motion, normal cervical spine, negative straight leg raising, grossly intact cranial nerves, normal motor functions, power, tone, and reflexes in all four extremities and intact sensory system. (Exhibits 6F & 7F)

(Tr. 20.)

The ALJ's treatment of Dr. Zota's opinion is troubling. This is because nowhere in his decision does the ALJ specifically assert the weight he is attributing it. Of course, as noted, if the ALJ had adopted all of Dr. Zota's proposed limitations in determining Plaintiff's RFC evaluation, the error might well be harmless. After all, if the ALJ explicitly incorporated Dr. Zota's proposed limitations into Plaintiff's RFC, it would then be clear that the ALJ had attributed significant weight to those proposed limitations. Instead, here, the ALJ incorporated almost all of Dr. Zota's limitations in Plaintiff's RFC, with one notable exception.

Specifically, as demonstrated above, Dr. Zota expressed a concern that Plaintiff may have difficulty sitting or standing for more than fifteen minutes at a time. The ALJ apparently recognized this as well, because he characterized Dr. Zota's opinion as opining that Plaintiff might have difficulty sitting or standing for more than fifteen minutes at a time. Nevertheless, while the ALJ incorporated a sit/stand option in Plaintiff's RFC, presumably based at least in part on Dr. Zota's recommendation, the ALJ silently passed over Dr. Zota's conclusion that Plaintiff might struggle if required to sit or stand more than fifteen minutes at a time. Rather than incorporate a sit/stand limitation in Plaintiff's RFC permitting Plaintiff to alternate between sitting and standing at will, or in fifteen minute increments, the ALJ instead incorporated a sit/stand limitation in Plaintiff's RFC permitting Plaintiff to do so in thirty minute increments.

Thus, without explanation, the ALJ doubled the frequency of the sit/stand option contemplated by Dr. Zota. The Court is unwilling to simply presume this unexplained

10

deviation from Dr. Zota's opinion is harmless.[6] The ALJ's failure to explain his deviation from Dr. Zota's opinion in this regard also requires the undersigned to speculate as to whether this deviation was intentional or an oversight. It is thus unclear whether Plaintiff's RFC is supported by substantial evidence as to the sit/stand restriction.[7]

The Commissioner, on the other hand, disagrees and sees no meaningful error here, contending that the essence of Dr. Zota's restriction is that there be no *prolonged* sitting/standing. (Docket Entry 14 at 12.) Here, the commissioner contends, the ALJ addressed Dr. Zota's concern that Plaintiff not be required to engage in prolonged sitting or standing by incorporating in the RFC a thirty minute sit/stand restriction. (*Id.*) However, this argument entirely omits a salient feature of Dr. Zota's opinion, his concern that Plaintiff

---

[6] The Court observes that about two-thirds of the way through her administrative hearing, itself just shy of thirty minutes, Plaintiff asked to stand up, which she proceeded to do with the aid of her husband. (Tr. 51.) In his decision, the ALJ found Plaintiff less than entirely credible, in part because at her hearing she was assisted in walking and standing by her husband, which the ALJ considered "inconsistent with the record." (Tr. 21.) However, as explained throughout this Recommendation, it is unclear whether the ALJ, in reaching this conclusion, considered Dr. Alexander's walker/wheelchair recommendation (discussed further below) and also Dr. Zota's fifteen minute sit/stand recommendation (discussed further above), because he never discussed either in his decision. A properly articulated analysis of Dr. Alexander's walker/wheelchair recommendation and also Dr. Zota's fifteen minute sit/stand recommendation is thus also relevant to a credibility determination supported by substantial evidence. Plaintiff also contends that the ALJ erred in finding her less than entirely credible because he failed to take into consideration her inability to pay for medical expenses. (Docket Entry 11 at 7.) This argument may well have some merit, however, it can be considered further on remand and the Court need not resolve this issue here.

[7] *Compare Seaman v. Astrue*, No. 4:11-cv-988, 2012 WL 1466607, at *11 (N.D. Ohio Apr. 27, 2012) (remanding, in part because, "[t]he ALJ failed to address Dr. Weiss's opinions that Plaintiff required an at-will sit/stand option (as opposed to a sit/stand option every 30 minutes)") *with Botello v. Astrue*, No. 07-CV-02396-CMA, 2009 WL 995724, *10 (D. Colo. Apr 13, 2009) (finding no error where "in his RFC assessment, the ALJ specifically found that Plaintiff could sit/stand for only thirty minutes at a time . . . . [and] the ALJ's RFC mirrors Dr. Lindell's opinion on this limitation.") *affirmed* 376 Fed. App'x 847 (10th Cir. 2010); *see also DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator.").

may have difficulty sitting or standing for longer than fifteen minute increments. The RFC "is the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545. If the ALJ is inclined to partially discount Dr. Zota's opinion, he certainly may do so, however, he must also anchor this decision in substantial record evidence and articulate it in his decision.[8]

There is an additional omission in the ALJ's decision which further undermines the Court's confidence that the ALJ's RFC is supported by substantial evidence. Dr. Alexander, Plaintiff's treating physician, told her to obtain a walker or a wheelchair in March of 2011. (Tr. 386.) Yet, the ALJ never mentions this in his decision, again leaving the undersigned to speculate as to whether this omission is intentional (that is, whether the ALJ implicitly rejected the accommodation) or inadvertent (that is, whether the ALJ simply neglected to consider it). The undersigned is unwilling to deem the omission harmless, especially given Dr. Zota's concerns regarding Plaintiff's ability to sit/stand for more than fifteen minutes at a time.[9]

Nor does Defendant's response to the ALJ's omission of Dr. Alexander's recommendation that Plaintiff use a wheel chair/walker meaningfully address the Court's concerns. Defendant contends that Dr. Alexander's advice that Plaintiff obtain a wheelchair/walker was inconsistent with other additional findings Dr. Alexander made upon

---

[8] The ALJ's thirty minute sit/stand option was presented in a hypothetical to the VE. (TR. 53-55.) Consequently, the VE's testimony that Plaintiff could perform work as a marker, photocopy machine operator, and ticket taker was premised on the ability to sit and stand for thirty minute increments. It is not clear from the record if those positions would accommodate a fifteen minute sit/stand option. As mentioned earlier, the burden at this step falls on the Commissioner.

[9] Plaintiff also correctly points out that a second state consultative examiner found that she could only squat one-quarter while holding on to her husband. (Docket Entry 11 at 9 citing Tr. 302.) While evidence such as this does seem relevant to Plaintiff's ability to sit and stand, the ALJ did not mention it in his decision.

examination. (Docket Entry 14 at 6.) However, the ALJ never addressed these other findings in his decision. As explained earlier, it is not the province of the Court to review the evidence de novo, reconcile evidence, or find facts in the first instance. That is the duty of the ALJ and because it is not clear whether the ALJ meaningfully discharged this duty here, remand is the better course.

In short, the Commissioner must consider "all the evidence and explain on the record the reasons for [her] findings, including the reason for rejecting relevant evidence in support of the claim. Even if legitimate reasons exist for rejecting or discounting certain evidence, the [Commissioner] cannot do so for no reason or for the wrong reason." *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980) (citation omitted). The ALJ's duty of explanation is satisfied "[i]f a reviewing court can discern 'what the ALJ did and why he did it.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999). Here, because the ALJ failed to provide sufficient explanation to support his RFC assessment, the Court "cannot tell whether [his] decision is based on substantial evidence." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings. The Court declines consideration of the additional issues raised by Plaintiff at this time. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763–764 (W.D. Va. 2002) (on remand, the prior decision of no preclusive effect, as it is vacated and the new hearing is conducted).

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's Motion for Judgment Reversing the Commission (Docket Entry 10) should be **GRANTED** and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
April 17, 2015